# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MOVECORP 10300 Metric Blvd. Suite 150, Austin, TX 78758; and MICHAEL LOUGHREY, 12333 Cedar Bend Cv., Austin, TX 78758, <br><br> *Plaintiffs*, <br><br> v. <br><br><br><br><br> SMALL BUSINESS ADMINISTRATION; JOVITA CARRANZA, in her official capacity as Administrator of the Small Business Administration; STEVEN MNUCHIN, in his official capacity as Secretary of the Treasury; and THE UNITED STATES OF AMERICA, <br><br> *Defendants*. | Civil Action No. _____ <br><br> **VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiffs MoveCorp and Michael Loughrey submit this Complaint for Declaratory Judgment and request for Injunctive Relief to end invalid and unlawful portions of the Amended Interim Final Rule that the United States Small Business Administration promulgated on June 18, 2020, 85 Fed. Reg. at 36,717. The challenged portions of SBA's Amended Interim Final Rule purport to make certain businesses ineligible for Paycheck Protection Program loans under the CARES Act in contravention of the unambiguous statutory text and the limited authority that Congress delegated to SBA. In support of this request, Plaintiffs claim and aver as follows:

**INTRODUCTORY STATEMENT**

The outbreak of COVID-19 and the government's response to that virus have decimated the American economy.  To help mitigate the economic damage and keep small businesses afloat during these unprecedented times, the United States Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") and the Paycheck Protection Program and Health Care Enhancement Act.  Through these laws, Congress made $659,000,000,000 available for small businesses in the form of Paycheck Protection Program ("PPP") loans.  The federal government fully guarantees PPP loans and a recipient of a PPP loan can qualify to have the loan fully forgiven.

Congress tasked the Small Business Administration ("SBA") with promulgating regulations to administer PPP loans to *any* business concern based in the United States with fewer than 500 employees, so long as the small business was in operation on February 15, 2020, and had employees or independent contractors whom the business concern paid.

Mr. Loughrey owns over seventy percent of such a business, MoveCorp, which is principally located in Austin, Texas.  But SBA has refused to fulfill its statutory duty to make PPP loan guarantees available to Mr. Loughrey's business.  With no delegation of authority to do so, SBA took it upon itself to exclude certain categories of businesses from eligibility for PPP loans.  One category SBA has excluded is businesses owned by persons under indictment.  Mr. Loughrey was arrested in 2019 for Driving While Intoxicated ("DWI"), a misdemeanor.  He was charged upon information and was scheduled to defend against this misdemeanor charge earlier this year, but COVID-19 shut down the Texas state courts.  Hence, his business is caught in a Catch-22 (or Covid-22!).  He cannot get his misdemeanor indictment adjudicated before the PPP program ends.  But, even if he were to be convicted, a guilty finding would not prohibit MoveCorp from receiving PPP funds.  As he is only under indictment or information, albeit for a misdemeanor (of which he is innocent until proven guilty), under the regulation his company cannot receive funds!  SBA has applied its facially invalid

regulation to indiscriminately exclude the Plaintiffs from PPP loans that Congress made available to *all* small businesses.

Plaintiffs ask this Court to reject SBA's unlawful administrative action and ensure that PPP loans are available to all small businesses as Congress intended, including the Plaintiffs' businesses.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1346, 1361, and 2201.

2.      Additionally, this Court has jurisdiction to review agency action under 5 U.S.C. § 702, which provides, in part: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

3.      And pursuant to 15 U.S.C. § 634(b), jurisdiction is conferred upon any United States District Court to determine controversies against the Administrator of SBA.

4.      This Court has jurisdiction to grant injunctive relief pursuant to 28 U.S.C. § 2202 and Rule 65 of the Federal Rules of Civil Procedure.

5.      Venue is proper in the District of the District of Columbia pursuant to 28 U.S.C. § 1391, as the Small Business Administration's headquarters are in this District.

## PARTIES

6.      Plaintiff MoveCorp is a Texas Corporation with its principal place of business in Austin, Texas.  It is a moving company serving business clients.  MoveCorp serves central Texas and has about 40 employees.

7.      Plaintiff Mike Loughrey is a resident of Austin, Texas.  He is President of and owns over 70% of MoveCorp.

8.     Defendant SBA is a federal agency created and authorized pursuant to 15 U.S.C. § 633 *et seq.* SBA maintains an office at 409 3rd St. SW, Washington, DC 20416.

9.     Defendant Jovita Carranza is the Administrator of SBA (the "Administrator"), a Cabinet-level position.  She is sued in her official capacity.

10.     The Administrator may be sued pursuant to 15 U.S.C. § 634(b) ("In the performance of, and with respect to, the functions, powers, and duties vested in [her] by this chapter the Administrator may … sue and be sued … in any United States district court[.]").

11.     Defendant Steven Mnuchin (the "Secretary") is the Secretary of the United States Department of the Treasury ("Treasury").  He is sued in his official capacity.

12.     Defendant the United States of America is a sovereign nation dedicated to protecting life, liberty, and property, as provided for in the U.S. Constitution.

## STATEMENT OF FACTS

### A.  Mr. Loughrey Has Maintained a Successful Business for More than a Decade

13.     Mr. Loughrey, with some partners, established MoveCorp in June 2006.  It is a corporate moving company with about 40 employees.  Mr. Loughrey followed the PPP process closely and relied on its being available so that he could retain and pay his employees throughout the crisis.

14.     MoveCorp has not furloughed or terminated a single hourly employee.  The company has done this in part by relying on the prospect of PPP funds.  At the end of March, MoveCorp through Mr. Loughrey made sure that each employee would receive the same monthly pay he or she had averaged over the previous 6 months.

### B.  COVID-19, States of Emergency, and the Economic Collapse

15.     The health and economic impacts of COVID-19 and the resulting executive orders have been documented thoroughly.

16.     In response to the COVID-19 pandemic, on March 13, 2020, Governor Greg Abbott issued a Declaration of Disaster in Texas due to COVID-19. https://gov.texas.gov/news/post/governor-abbott-declares-state-of-disaster-in-texas-due-to-covid-19 On March 19, the Governor issued a Proclamation to mitigate the spread of COVID-19 which included avoiding groups of 10 or more.  https://gov.texas.gov/news/post/governor-abbott-issues-executive-orders-to-mitigate-spread-of-covid-19-in-texas.   The Governor has continued to issue Executive Orders related to COVID-19 as recently as June 3, 2020. https://gov.texas.gov/uploads/files/press/EO-GA-26_expanded_opening_COVID-19.pdf

17.     As of June 4, 2020, at least 42,600,000 people have filed for unemployment benefits since the COVID-19 pandemic hit the United States, with 1,877,000 new claims filed the week of June 1, 2020.  Jeff Cox, *Jobless Claims, Total Unemployment Level Worse Than Expected*, CNBC (June 4, 2020, 9:39 AM), *available at* https://www.cnbc.com/2020/06/04/weekly-jobless-claims.html.

### C. Congress Required SBA to Administer PPP Loans Based on Only Two Considerations

18.     To address the economic downturn related to COVID-19, Congress passed the CARES Act, which President Donald J. Trump signed into law on March 27, 2020.  CARES Act, Pub. L. 116-136, 134 Stat. 281 (2020).

19.     Among other things, the CARES Act added a new, temporary product to SBA's 7(a) loan program called the PPP.  *Id.* § 1102.

20.     Specifically, Section 1102 amended 15 U.S.C. § 636(a) by adding subsection "(36) Paycheck Protection Program."  *Id.*

21.     The CARES Act made $349,000,000,000 available in "general business loans authorized under section 7(a) of the Small Business Act (15 U.S.C. 636(a)), including [PPP] loans made under paragraph (36) of such section, as added by subsection (a)[.]"  *Id.* § 1102(b)(1).

22.     Congress established PPP loans to "provide economic relief to small businesses nationwide adversely impacted under the COVID-19 Emergency Declaration issued by President Trump on March 13, 2020."  Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. at 20,811 (Apr. 15, 2020) (to be codified at 13 C.F.R. 120).

23.     Congress would later pass the Paycheck Protection Program and Health Care Enhancement Act on April 24, 2020, which amended the CARES Act by increasing the funds available for PPP loans to $659,000,000,000.  Pub. L. No. 116-139, § 101(a)(1).

24.     Although funds distributed through the PPP are nominally loans, "the 'loans' are really grants.  Repayment is not a significant part of the program.  That is why Congress did not include creditworthiness as a requirement."  *In re Skefos*, No. 19-29718-L, 2020 WL 2893413, at *11–12 (Bankr. W.D. Tenn. June 2, 2020) (quoting *In re Roman Catholic Church of Archdiocese of Santa Fe*, No. 18-13027 T11, 2020 WL 2096113, at *6 (Bankr. D.N.M. May 1, 2020)).

25.     To determine how much money a business may borrow, Congress created a payroll-based formula but capped the amount a business may borrow at $10,000,000.  CARES Act § 1102(a)(2)(36).

26.     Section 1102 of the CARES Act temporarily permits SBA to guarantee 100 percent of PPP loans; section 1106, meanwhile, provides for loan forgiveness up to the full principal amount of qualifying loans guaranteed under PPP.  *Id.* §§ 1102, 1106(b)).

27.     A recipient can use a PPP loan to help cover the following costs:

a.      Payroll;

b.      Group healthcare benefits during periods of paid sick, medical, or family leave, and insurance premiums;

c.      Employee salaries, commissions, or similar compensations;

      d.      Interest payments on a mortgage obligation (but not including any prepayment of or payment of principal toward a mortgage obligation);

      e.      Rent (including rent under a lease agreement);

      f.      Utilities; and

      g.      Interest on any other debt obligations that the business incurred before the covered period.

*Id.* § 1102(a)(2)(F)(i).

28.      The CARES Act instructed SBA to promulgate rules and administer the PPP.  *Id.* § 1102.

29.      Section 1114 provided SBA with emergency rulemaking authority: "Not later than 15 days after the date of the enactment of this Act, the Administrator shall issue regulations to carry out this title and the amendments made by this title without regard to the notice requirements under section 533(b) of title 5, United States Code."  *Id.* § 1114.

30.      The CARES Act declares that, "in addition to small business concerns, *any business concern*, nonprofit organization, veterans organization, or Tribal business concern described in section 31(b)(2)(C) shall be eligible to receive a covered loan," so long as the business employs 500 or fewer employees or, "if applicable," employs less than "the size standard in number of employees established by the Administration for the industry in which the business concern … operates."  *Id.* § 1102(a)(2)(36)(D)(i) (emphasis added).  Sole proprietorships and independent contractors are eligible for PPP loans.  *Id.* § 1102(a)(2)(36)(D)(ii)(I).

31.      In recognition that SBA traditionally declared some classes of businesses ineligible for SBA loans, Congress included a section in the PPP entitled, "Increased Eligibility for Certain Small Businesses and Organizations."  15 U.S.C. § 636(a)(36)(D).

32.     To accomplish this increase in eligibility, Section 1102 amended 15 U.S.C. §
636(a)(36)(F)(ii) to limit the considerations on which SBA can base eligibility for a PPP loan guarantee.
*See* CARES Act § 1102.

33.     SBA may consider only two factors in determining PPP loan eligibility: whether a
borrower "(aa) was in operation on February 15, 2020; and (bb)(AA) had employees for whom the
borrower paid salaries and payroll taxes; or (BB) paid independent contractors, as reported on a Form
1099-MISC." 15 U.S.C. § 636(a)(36)(F)(ii)(II).

34.     "While Congress may once have been willing to permit the SBA to exclude these
businesses from its (the SBA's) lending programs, that willingness evaporated when the COVID-19
pandemic destroyed the economy and threw tens of millions of Americans out of work.  Simply put,
Congress did not pick winners and losers in the PPP.  Instead, through the PPP, Congress provided
temporary paycheck support to *all* Americans employed by *all* small businesses that satisfied the two
eligibility requirements—even businesses that may have been disfavored during normal times.  Thus,
the SBA's PPP Ineligibility Rule is invalid because it contravenes the PPP." *DV Diamond Club of Flint,
LLC v. U.S. Small Bus. Admin.*, No. 20-CV-10899, 2020 WL 2315880, at *1 (E.D. Mich. May 11, 2020).

35.     The CARES Act also includes a "catch-all" provision to prevent SBA from applying
its ineligibility rules to PPP loans:

> Neither may the SBA continue to apply these rules pursuant to § 636(a)(36)(B), which
> states: "Except as otherwise provided in this paragraph, the [SBA] may guarantee
> covered loans under the same terms, conditions, and processes as a loan made under
> this subsection." 15 U.S.C. § 636(a)(36)(B).  This provision likely constitutes a catch-
> all governing procedures otherwise unaffected by the mandate of the CARES Act and
> the PPP and does not detract from the broad grant of eligibility.

*DV Diamond Club*, 2020 WL 2988528, at *2 (6th Cir. May 15, 2020).

**D.** **SBA Promulgated an Interim Final Rule that Exceeded Its Statutory Grant of Authority**

36.     As required by the PPP provisions of the CARES Act, SBA first promulgated an Interim Final Rule on April 2, 2020.  Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. at 20,811.

37.     SBA posted additional Interim Final Rules on its PPP loans on April 3, 15, 24, 28, and 30, and May 5, 8, 19, and 26, and June 16, 18, and 19, 2020, and the Department of the Treasury posted an additional interim final rule on April 28, 2020.  *See* Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. at 20,811; Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. at 20,817 (Apr. 15, 2020) (to be codified at 13 C.F.R. pt. 121); Business Loan Program Temporary Changes; Paycheck Protection Program— Additional Eligibility Criteria and Requirements for Certain Pledges of Loans, 85 Fed. Reg. at 21,747 (Apr. 20, 2020) (to be codified at 13 C.F.R. pt. 120); Business Loan Program Temporary Changes; Paycheck Protection Program-Requirements-Promissory Notes, Authorizations, Affiliation, and Eligibility, 85 Fed. Reg. at 23,450 (Apr. 28, 2020) (to be codified at 13 C.F.R. pt. 120, 121); Small Business Administration Business Loan Program Temporary Changes; Paycheck Protection Program—Additional Criterion for Seasonal Employers, 85 Fed. Reg. at 23,917 (Apr. 30, 2020) (to be codified at 13 C.F.R. pt. 120); Business Loan Program Temporary Changes; Paycheck Protection Program-Requirements-Disbursements, 85 Fed. Reg. at 26,321 (May 4, 2020) (to be codified at 13 C.F.R. pt. 120); Business Loan Program Temporary Changes; Paycheck Protection Program-Requirements-Corporate Groups and Non-Bank and Non-Insured Depository Institution Lenders, 85 Fed. Reg. at 26,324 (May 4, 2020) (to be codified at 13 C.F.R. pt. 120); Business Loan Program Temporary Changes; Paycheck Protection Program-Nondiscrimination and Additional Eligibility Criteria, 85 Fed. Reg. at 27,287 (May 8, 2020) (to be codified at 13 C.F.R. pt. 113, 120); Business Loan

Program Temporary Changes; Paycheck Protection Program-Requirements-Extension of Limited

Safe Harbor With Respect to Certification Concerning Need for PPP Loan Request, 85 Fed. Reg. at

29,845 (May 19, 2020) (to be codified at 13 C.F.R. pt. 120); Business Loan Program Temporary

Changes; Paycheck Protection Program-Loan Increases, 85 Fed. Reg. at 29,842 (May 19, 2020) (to be

codified at 13 C.F.R. pt. 120); Business Loan Program Temporary Changes; Paycheck Protection

Program-Eligibility of Certain Electric Cooperatives, Fed. Reg. at 29,847 (May 19, 2020) (to be

codified at 13 C.F.R. pt. 120); Business Loan Program Temporary Changes; Paycheck Protection

Program-Treatment of Entities With Foreign Affiliations, Fed. Reg. at 30,835 (May 21, 2020) (to be

codified at 13 C.F.R. pt. 120, 121); Business Loan Program Temporary Changes; Paycheck Protection

Program-Second Extension of Limited Safe Harbor With Respect to Certification Concerning Need

for PPP Loan and Lender Reporting, 85 Fed. Reg. at 31,357 (May 26, 2020) (to be codified at 13

C.F.R. pt. 120); Business Loan Program Temporary Changes; Paycheck Protection Program—

Revisions to First Interim Final Rule, 85 Fed. Reg. at 36,308 (June 16, 2020) (to be codified at 13

C.F.R. pt. 120); Business Loan Program Temporary Changes; Paycheck Protection Program—

Additional Revisions to First Interim Final Rule, 85 Fed. Reg. at 36,717 (June 18, 2020) (to be codified

at 13 C.F.R. pt. 120); Business Loan Program Temporary Changes; Paycheck Protection Program—

Revisions to the Third and Sixth Interim Final Rules, 85 Fed. Reg. at 36,997 (June 19, 2020) (to be

codified at 13 C.F.R. pt. 120).

38.     The first of these rules that is relevant to this case is SBA's Interim Final Rule that

became effective on April 15, 2020.   Business Loan Program Temporary Changes; Paycheck

Protection Program, 85 Fed. Reg. at 20,811 ("Interim Final Rule").   The Interim Final Rule

implemented sections 1102 and 1106 of the CARES Act, and "applies to applications submitted under

the Paycheck Protection Program through June 30, 2020, or until funds made available for this

purpose are exhausted." *Id.*

39.     SBA recognized the expediency with which Congress wanted PPP loans administered and sought to limit discretion and delay in the lending process by authorizing lenders, which act as SBA's delegatees. *See* 15 U.S.C. § 636(a)(36)(F)(iii). The Interim Final Rule instructed lenders to issue loans in reliance on a borrower's certifications that the borrower is eligible for a PPP loan. *Id.*

40.     The Interim Final Rule listed businesses eligible for PPP loans. SBA's list largely tracked the criteria set out in the CARES Act:

> You are eligible for a PPP loan if you have 500 or fewer employees whose principal place of residence is in the United States, or are a business that operates in a certain industry and meet the applicable SBA employee-based size standards for that industry, and:
> i. You are:
> A. A small business concern as defined in section 3 of the Small Business Act (15 U.S.C. 632), and subject to SBA's affiliation rules under 13 CFR 121.301(f) unless specifically waived in the Act; or
> B. A tax-exempt nonprofit organization described in section 501(c)(3) of the Internal Revenue Code (IRC), a tax-exempt veterans organization described in section 501(c)(19) of the IRC, Tribal business concern described in section 31(b)(2)(C) of the Small Business Act, or any other business; and
> ii. You were in operation on February 15, 2020 and either had employees for whom you paid salaries and payroll taxes or paid independent contractors, as reported on a Form 1099–MISC.
> You are also eligible for a PPP loan if you are an individual who operates under a sole proprietorship or as an independent contractor or eligible self-employed individual, and you were in operation on February 15, 2020.
> You must also submit such documentation as is necessary to establish eligibility such as payroll processor records, payroll tax filings, or Form 1099–MISC, or income and expenses from a sole proprietorship. For borrowers that do not have any such documentation, the borrower must provide other supporting documentation, such as bank records, sufficient to demonstrate the qualifying payroll amount.

*Id.* at 20,812.

41.     But SBA did not stop there. Continuing beyond the text of the CARES Act, SBA posed the question, "Could I be ineligible *even if I meet the eligibility requirements* in (a) above?" *Id.* (emphasis added).

42.     Rather than answering "no," as the CARES Act required, SBA included a non-exhaustive list of businesses that SBA deemed ineligible for PPP.  Specifically, Section III.b.2.iii (the "Criminal History Rule") of the Interim Final Rule states:

> You are ineligible for a PPP loan if, for example:
> i. You are engaged in any activity that is illegal under Federal, state, or local law;
> ii. You are a household employer (individuals who employ household employees such as nannies or housekeepers);
> iii. **An owner of 20 percent or more of the equity of the applicant is incarcerated, on probation, on parole; presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction; or has been convicted of a felony within the last five years**; or
> iv. You, or any business owned or controlled by you or any of your owners, has ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is currently delinquent or has defaulted within the last seven years and caused a loss to the government.
> The Administrator, in consultation with the Secretary of the Treasury (the Secretary), determined that household employers are ineligible because they are not businesses. 13 CFR 120.100.
> * * *
> Businesses that are not eligible for PPP loans are identified in 13 CFR 120.110 and described further in SBA's Standard Operating Procedure (SOP) 50 10, Subpart B, Chapter 2, except that nonprofit organizations authorized under the Act are eligible. (SOP 50 10 can be found at https://www.sba.gov/document/sop-50-10-5-lenderdevelopment-company-loan-programs.).

*Id.* (emphasis added).

43.     Referenced in the Interim Final Rule, 13 C.F.R. 120.110 provides in relevant part: "The following businesses are ineligible [for SBA business loans]: … Businesses with an Associate who is incarcerated, on probation, on parole, or has been indicted for a felony or crime of moral turpitude." 13 C.F.R. § 120.110(n).

44.     The Interim Final Rule, its Criminal History Rule, and the PPP application have changed several times since the PPP's inception.

45.     The original PPP loan application that SBA issued on March 31, 2020, excluded businesses owned by persons with a felony conviction in the last seven years.  (A copy of the original

PPP application is attached as Exhibit 1); *see also SBA's Bumpy Guidance on Criminal History Requirements for Stimulus Loans*, Collateral Consequences Resource Center (April 3, 2020), *available at* https://ccresourcecenter.org/2020/04/03/sbas-bumpy-guidance-on-criminal-history-requirements-for-stimulus-loans/.

46.     Two days later, on April 2, 2020, SBA adopted a new PPP application ("Second PPP Application") that it used for over two months.  (A copy of the Second PPP Application is attached as Exhibit 2).  This version included a five-year look-back for all felonies that reflects the language of the Interim Final Rule.  (Exh. 2).

47.     On April 6, 2020, eleven members of Congress wrote a letter to Secretary Mnuchin and Administrator Carranza, informing them that the Interim Final Rule "contains many restrictions that were not only not included in the CARES Act," but that "were not intended by Congress at all." (A copy of the letter is attached as Exhibit 3).

48.     Specifically referring to the Criminal History Rule, the Members of Congress informed Defendants Mnuchin and Carranza that those restrictions on PPP loans were "contrary to law, public policy, and common sense."  (Exh. 3).

49.     The letter concluded as follows:

> The Paycheck Protection Program was designed by Congress to give all small businesses a lifeline. **The employees of the formerly incarcerated are just as entitled to remaining on payroll as other Americans.**  The CARES Act was designed to take care of ALL Americans.  We hope you will update the regulations to reflect that.

(Exh. 3) (emphasis added).

50.     Senators Rob Portman and Benjamin L. Cardin, in a show of bipartisan opposition to the Criminal History Rule, also sent a letter to Defendants Mnuchin and Carranza on April 30, 2020. (A copy of the letter is attached as Exhibit 4).

51.     In their letter, Senators Portman and Cardin requested that SBA "revise its Interim Final Rule … so that it properly reflects Congress's and the Administration's support for second chances following a record of bipartisan criminal justice reforms in Congress dating back more than a decade." (Exh. 4, p. 1).

52.     According to the Senators, the "new restrictions" that Defendants "placed upon small businesses with partial owners who have been involved in the criminal justice system will only hurt the economy, and further diminish the workforce and the tax base they generate." (Exh. 4, p. 1).

53.     The Senators were clear that the Criminal History Rule was counter to Congress's purpose in enacting the CARES Act and the PPP:

> Through the *CARES Act*, and specifically the PPP, Congress sought to ensure that emergency relief is made available to small businesses that have been negatively impacted by this pandemic. **This relief was not intended to exclude business owner[s] who have made mistakes, paid their debt, and turned their lives around.** Rather, it was intended to provide a bridge to hard-working American small business owners who are keeping people employed and supporting the essential services that benefit all of us during this unprecedented crisis.

(Exhibit 4, p. 2) (emphasis added).

54.     In closing, Senators Portman and Cardin urged SBA to "revise this harmful, exclusionary Interim Final Rule so that more businesses are eligible for emergency relief, and ensure that SBA rules support second chances, a stronger economy, and safer communities across all of its programs." (Exh. 4, p. 2).

55.     In yet another letter from Congress, 66 Members of Congress and 23 Senators reiterated to Defendants Mnuchin and Carranza that the Criminal History Rule was counter to the purpose of the CARES Act. (A copy of the letter is attached as Exhibit 5).

56.     Although the main focus of the letter was the difficulties that minority-owned businesses were facing in acquiring PPP loans, the letter also objected to SBA's "troubling" decision to "exclude[] applicants with criminal history" from the PPP loan process. (Exh. 5, p. 2).

57.     Then, on June 10, 2020, Secretary Mnuchin testified before the Senate Small Business

Committee and suggested that SBA would revise the look-back period from five years to three years.

*See Treasury Secretary Mnuchin Announced 3 Big Changes to the PPP Small Business Loan Program as $130 Billion*

*in Aid Sits Unused*, Business Insider (June 10, 2020), *available at* https://www.businessinsider.com/ppp-

small-business-loan-changes-treasury-mnuchin-announced-big-unused-2020-6#the-trump-

administration-doesnt-plan-to-release-the-names-of-businesses-that-received-ppp-loans-1.

58.     On June 12, 2020, SBA announced that it was amending the Interim Final Rule to

reduce the look-back period under the Criminal History Rule from five years to one year.  Business

Loan Program Temporary Changes; Paycheck Protection Program—Additional Revisions to First

Interim Final Rule, 85 Fed. Reg. at 36,717 (June 18, 2020) ("Amended Interim Final Rule"); (A copy

of SBA's June 12 announcement outlining the amendments is attached as Exhibit 6).

59.     The Amended Interim Final Rule modified Part III.2.b.iii (now, the "Amended

Criminal History Rule"; together with the Criminal History Rule as the "Criminal History Rules") as

follows:

> *b. Could I be ineligible even if I meet the eligibility requirements in (a) above?*
>
> You are ineligible for a PPP loan if, for example:
>
>                     * * *
>
> iii. An owner of 20 percent or more of the equity of the applicant is incarcerated, on
> probation, on parole; presently subject to an indictment, criminal information,
> arraignment, or other means by which formal criminal charges are brought in any
> jurisdiction; or has been convicted of a felony involving fraud, bribery, embezzlement,
> or a false statement in a loan application or an application for federal financial assistance
> within the last five years or any other felony within the last year[.]

85 Fed. Reg. at 36,718.

60.     SBA offered the following explanation for the change:

> The First Interim Final Rule provided, among other things, that a PPP loan will not
> be approved if an owner of 20 percent or more of the equity of the applicant has been
> convicted of a felony within the last five years.  After further consideration, the

Administrator, in consultation with the Secretary of the Treasury (the Secretary), has determined that a shorter timeframe for felonies that do not involve fraud, bribery, embezzlement, or a false statement in a loan application or an application for federal financial assistance is more consistent with Congressional intent to provide relief to small businesses and also promotes the important policies underlying the First Step Act of 2018 (Pub. L. 115-391).

*Id.*

61.     Notably, SBA based its Amended Criminal History Rule on its understanding of the First Step Act of 2018, a general statute outside of SBA's expertise.  *See Ardestani v. I.N.S.*, 502 U.S. 129, 148 (1991) ("[R]eviewing courts do not owe deference to an agency's interpretation of statutes outside its particular expertise and special charge to administer.") (citing *Professional Reactor Operator Soc. v. NRC*, 939 F.2d 1047, 1051 (D.C. Cir. 1991) (no deference to agency interpretation of APA, because agency not assigned special role by Congress in construing that statute).

62.     SBA failed to explain how the restrictions imposed by its Amended Criminal History Rule, while less egregious than the initial Criminal History Rule, are required by or consistent with the First Step Act—let alone the CARES Act, the statute that SBA is administering.

63.     In conjunction with the Amended Interim Final Rule, SBA issued a revised PPP loan application ("Third PPP Application"):

> a.    6.    Within the last 5 years, for any felony involving fraud, bribery, embezzlement, or a false statement in a loan application or an application for federal financial assistance, **or within the last year, for any felony**, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; 4) been placed on pretrial diversion; or 5) been placed on any form of parole or probation (including probation before judgment)?

(A copy of the Third PPP Application is attached as Exhibit 7) (emphasis added).

64.     The Amended Criminal History Rule and the Third PPP Application leave intact Question 5, which excludes all persons indicted or charged—but not yet tried for or convicted of—*any* crime, regardless of whether that crime is a felony and regardless of whether that crime involved fraud, bribery, or lying on a loan application:

a.   5.  Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, or on probation or parole?

65.   The Third PPP Application also retains the original application's explicit warning that applicants will be denied based on criminal history: "*If questions (5) or (6) are answered "Yes," the loan will not be approved*."  (Exh. 7) (emphasis in original).

66.   A bi-partisan group of Senators quickly let the Defendants know that the changes were insufficient.  Senators Portman, Cardin, Lankford, and Booker issued a press release identifying that the Defendants failed to "fix a major flaw within the old rules that penalizes those who have yet to have their day in Court."  Press Release *Portman, Cardin, Lankford & Booker Statement on Administration's Updated Rules of PPP Eligibility for Small Business Owners with Previous Criminal Records*, *available at* https://www.portman.senate.gov/newsroom/press-releases/portman-cardin-lankford-booker-statement-administrations-updated-rules-ppp.

67.   The Senators stated:

We appreciate the Administration's willingness to engage with us on this issue, and we welcome this Interim Final Rule to remove some barriers to PPP loans for entrepreneurs who have been involved with the justice system. … **We remain concerned that individuals who have not yet had their day in court will still be prevented from securing a PPP loan, which violates a core tenet of our society: the presumption of innocence.** We further want to reiterate that it is inappropriate to exclude from the PPP any entrepreneur who has a prior felony unrelated to a financial crime. We will continue working with the Administration to ensure that small business owners and their employees are not unjustly prevented from securing these job-saving loans."

*Id.* (emphasis added).

68.   Although SBA continues to recognize that "the intent of the [CARES] Act is to provide relief to America's small businesses expeditiously" and to "provide immediate assistance to individuals, families, and businesses affected by the COVID-19 emergency[,]" (*compare* Amended Interim Final Rule, 85 Fed. Reg. at 36,717; *with* Interim Final Rule, 85 Fed. Reg. at 20,811-12) SBA's

Amended Criminal History Rule is still counter to that purpose and beyond the authority that Congress delegated to SBA in the CARES Act.

69.     Through its passage of the CARES Act, Congress did not delegate to SBA the authority to determine who is and is not morally worthy of a PPP loan.  *See DV Diamond Club*, 2020 WL 2988528, at *2 (6th Cir. May 15, 2020) ("[T]he Act's specification that 'any business concern' is eligible, so long as it meets the size criteria, is a reasonable interpretation.  That broad interpretation also comports with Congress's intent to provide support to as many displaced American workers as possible and, in doing so, does not lead to an "absurd result" as the SBA claims. Finally, by specifying 'any business concern,' Congress made clear that the SBA's longstanding ineligibility rules are inapplicable given the current circumstances.").

70.     Even if Congress had delegated that power to SBA—which it did not—the Interim Final Rule is an arbitrary and capricious exercise of that power.  *See PAM Squared at Texarkana, LLC v. Azar*, No. 1:18-CV-02542 (TNM), 2020 WL 364782, at *6 (D.D.C. Jan. 22, 2020) (striking down the Centers for Medicare & Medicaid Services' regulatory decision as arbitrary and capricious where the agency used the incorrect standard in its denial of equitable relief) (citing *Caring Hearts Personal Home Servs. v. Burwell*, 824 F.3d 968, 977 (10th Cir. 2016) (Gorsuch, J.)) ("An agency decision that loses track of its own controlling regulations and applies the wrong rules in order to *penalize private citizens* can never stand.") (emphasis added).

71.     This Court has set aside agency actions that "'entirely fail[] to consider an important aspect of the problem' before it." *Pub. Citizen v. Fed. Motor Carrier Safety Admin.*, 374 F.3d 1209, 1216 (D.C. Cir. 2004) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).  For instance, an agency decision that is "illogical on its own terms" is arbitrary and capricious.  *Am. Fed'n of Gov't Employees, Local 2924 v. Fed. Labor Relations Auth.*, 470 F.3d 375, 380 (D.C. Cir. 2006) (cleaned up).

72.     On Friday April 3, 2020, SBA issued additional guidance in which it exempted church organizations from SBA's affiliation rules that had made some churches ineligible for PPP loans under SBA's regulations.  Affiliate Rules for Paycheck Protection Program, 85 Fed Reg. at 20,817 (Apr. 3, 2020) (to be codified at 13 C.F.R. pt. 121).

73.     SBA typically refuses to make its loans available to "[b]usinesses principally engaged in teaching, instructing, counseling or indoctrinating religion or religious beliefs, whether in a religious or secular setting." 13 C.F.R. § 120.110(k).

74.     The Administrator announced that SBA made the change because it did not have a compelling interest "in denying emergency assistance to faith-based organizations that are facing *the same economic hardship to which the CARES Act responded* and who would be eligible for PPP but for their faith-based organizational and associational decisions." Affiliate Rules for Paycheck Protection Program, 85 Fed Reg. at 20819 (emphasis added).

75.     The Administrator failed to explain why SBA determined it should grant PPP eligibility to some businesses typically excluded by 13 C.F.R. § 120.110 but not do the same for persons accused of a crime.

76.     Despite repeated and bipartisan urging from the very legislators who wrote and passed the CARES Act, asking SBA to stop denying PPP loans based on the Criminal History Rules, Defendants inexplicably continue to do so.[1]

---

[1] On the afternoon of June 24, 2020, as undersigned counsel was preparing this Verified Complaint for filing, SBA announced that it was once again amending the Criminal History Rules, although the link to SBA's website does not yet work.  Counsel did obtain a copy of the new regulations from the SBA which purports to remove misdemeanors from prohibited catagories, but nothing stops the SBA from again changing the rules tomorrow nor can it be discerned if banks, the SBA's delgatees will be aware of them in time.  Given the urgent need to file this case in advance of the looming expiration of the PPP on June 30, 2020, this Verified Complaint does not reflect any pending changes to the Criminal History Rule.

**E. SBA's Unlawful Denial of PPP Loans to the Plaintiffs' Businesses**

77.     As a direct and proximate cause of COVID-19 and the related executive orders and economic downturn, MoveCorp has suffered significant business losses.

78.     To mitigate financial losses and stabilize its business in the face of COVID-19 and the related government orders, MoveCorp determined to apply for a PPP loan in the amount of $340,700.

79.     On April 7, 2020, Mr. Loughrey submitted along with MoveCorp's PPP loan to First Citizens ("First Citizens") Bank, Round Rock, Texas, a letter explaining why the company had to answer "yes" to question 5 regarding whether a more than 20% owner was under indictment.  (A copy of Mr. Loughrey's April 7 letter is attached as Exhibit 8).

80.     The letter stated, *inter alia*:

> I am writing this letter to explain why our accounting manager has answered "Yes" to question 5 on the PPP loan application.   I was arrested for Driving While Intoxicated in early February 2019.  I have hired an attorney and we were scheduled to see the Judge a few weeks ago.  Due to the Covid-19 Pandemic, we were rescheduled to a future date still to be determined. My attorney is confident this will be dismissed.  This is a misdemeanor charge and the DWI was not work related. I own 70% of MJD Moving Inc., dba MoveCorp and we are an "Essential" business.  We have over 30 employees with benefits that we are continuing to pay weekly.  Our workload has dropped significantly but I have committed to take care of our employees as long as I can.  We have not furloughed or laid off a single employee to date.  We have been paying our employees rather than lay them off.  In today's climate, I would say we are different than most businesses.

81.     Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), First Citizens operates as a delegatee of SBA in the processing and approval or denial of the PPP loan that MoveCorp sought.

82.     MoveCorp is fully qualified under the text of the CARES Act to receive a PPP loan. *See* 15 U.S.C. § 636(a)(36)(F)(ii)(II).

83.     MoveCorp intended and still intends to use the funds from a PPP loan in accordance with the PPP provisions of the CARES Act, Pub. L. No. 1160136, § 1102(a)(2)(F)(i), 134 Stat. 281 (2020).

84.     The Paycheck Protection Program Application Form that MoveCorp completed was the second iteration of the application.  (Exh. 2).  The form included eight questions.  Central to this lawsuit, are questions 5 and 6:

> a.  5.  Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, or on probation or parole?
> b.  6.  Within the last 5 years, for any felony, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; 4) been placed on pretrial diversion; or 5) been placed on any form of parole or probation (including probation before judgment)?

(Exh. 2).

85.     The application states explicitly, "*If questions (5) or (6) are answered "Yes," the loan will not be approved.*"  (Exh. 2) (emphasis in original).

86.     On April 24, 2020, First Citizens denied the Loan Request and directed MoveCorp to contact Vice President April Chittamai with any questions.  (A copy of the April 24 letter to Michael Loughrey from First Citizens is attached as Exhibit 9).

87.     On April 30, 2020 Ms. Chittamai reached out to Mr. Loughrey to explain:

> I am reaching out to give you an update on the PPP Loan request. The request did get flagged because you answered the number 5 question with a "yes" and they did end up declining your PPP Loan request. Apparently anyone that answered question 5 or 6 with a yes were flagged and reviewed manually. I wish I had better news for you. I am so disappointed in the outcome. I know this is so frustrating and stressful, and I am so sorry. If there is anything else that I can do to help, please let me know. I can make sure the account that we established at FCB gets closed so that you don't have to worry about it.

(A copy of her correspondence is attached as Exhibit 10).

88.     Mr. Loughrey asked for the reason in a formal letter and Ms. Chittamai responded on

June 15, 2020:

> We have received your request for a statement of reasons for our adverse credit
> decision regarding the above referenced loan request.
> Your loan request was denied because the Applicant would not be approved
> for the Paycheck Protection Program ("PPP") pursuant to the Small Business
> Administration's guidance for the PPP, for the reason that applicant checked the box
> yes on question number 5 which states as follows: "Is the Applicant (if an individual)
> or any individual owning 20% or more of the equity of the Applicant subject to
> indictment, criminal information, arraignment or other means by which formal
> criminal charges are brought in any jurisdiction, or presently incarcerated, or on
> probation or parole, as disclosed in the loan application?"

(A copy of the document Ms. Chittamai sent to Mr. Loughrey is attached as Exhibit 11).

89.     To this day, Mr. Loughrey has not received a PPP loan for MoveCorp.

90.     MoveCorp correctly filled out the application completely and included all necessary

documents.  And MoveCorp meets the considerations set out in the CARES Act, Pub. L. No. 116-

136, § 1102(a)(2)(F)(i), 134 Stat. 281 (2020).

91.     As a direct and proximate cause of COVID-19 and Governor Abbott's executive

orders, MoveCorp has suffered significant business losses.

**F.   SBA's Criminal History Rule in the Interim Final Rule Is Unlawful**

92.     Like most other small businesses affected by this historic economic downturn,

MoveCorp needs financial assistance and loan forgiveness in order to survive.

93.     The CARES Act provided for PPP loans to assist small businesses financially while

they suffer a significant drop in trade and income as a result of the historic economic downturn that

resulted from COVID-19 and the government's attempts to combat that virus.

94.     The plain text of the CARES Act is clear and unambiguous as to which businesses are

eligible for PPP loans.

95.     Because the CARES Act makes unambiguously clear which businesses are eligible for

PPP loans, SBA lacked authority to promulgate the Criminal History Rule in any of its versions.

96. The Criminal History Rule, which purports to restrict or clarify which businesses are eligible for PPP loans, is short of statutory right and unlawful as it is contrary to the text of the CARES Act and beyond the specific authority that Congress delegated to SBA through the CARES Act. *See City of Arlington, Tex. v. FCC*, 596 U.S. 290, 307 (2013) (explaining that a rule that exceeds an agency's statutory grant of authority is without legal basis and, therefore, is unlawful).

97. Versions of SBA's Criminal History Rule have resulted in the Plaintiffs' ineligibility for PPP loans that the Plaintiffs are otherwise qualified for under the plain text of the CARES Act.

### G. The Plaintiffs Have Experienced, and Will Continue to Experience, Concrete and Particularized Harm as a Direct Result of the SBA's Ineligibility Section Without Injunctive Relief

98. As a direct result of SBA's Criminal History Rule, and the Defendants' and their delegatee's application of those rules against the Plaintiffs, the Plaintiffs and their employees have suffered and will continue to suffer irreparable injuries including but not limited to financial ruin and business ruination. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932 (1975) (affirming that "substantial loss of business and perhaps even bankruptcy" are the type of irreparable harm that justifies interim relief); *DV Diamond Club*, 2020 WL 2988528, at *3 ("Plaintiffs are also at a substantial risk of losing their businesses.").

99. Without a court order, Plaintiffs will remain unable to obtain a PPP loan as Congress provided for in the CARES Act.

100. The funds allocated for PPP are being granted on a first-come, first-served basis until SBA dispenses the funds. 13 C.F.R. § 120.

101. Considering the pressures and workload that the CARES Act and the COVID-19 pandemic have placed on SBA, the Plaintiffs reasonably fear that the PPP funds will be exhausted before Plaintiffs could appeal SBA's decision.

102.    There is no time for the Plaintiffs to obtain relief, without the urgent aid of an order by this Court, while PPP funds are still available.

103.    If the Plaintiffs remain unable to obtain PPP loans, they may need to lay off staff or retain financial resources to recover following the COVID-19 pandemic, which would cause permanent damage to a business that has been a success story in the Austin community.

104.    The Plaintiffs' business will be in a dire financial condition and at risk of being unable to regain the success it enjoyed before the pandemic-related economic downturn.

105.    The Plaintiffs have been damaged and will continue to be damaged irreparably by Defendants' conduct.  No adequate remedy at law is available that could compensate Plaintiffs for their damages.

106.    The hardship that the Plaintiffs will experience will greatly exceed any hardship that the Defendants would incur by having to fulfill their statutory duty of administering PPP loans to *all* small businesses who meet the conditions set out in the CARES Act rather than only those businesses that the Defendants have arbitrarily declared eligible.  Any marginal increase in the cost of the PPP program will be negligible at best and pales in comparison to the very real cost that the Plaintiffs have felt and continue to feel.

107.    The public interest also favors granting injunctive relief as requested by the Plaintiffs. The Austin community and region has benefited from the generosity and success of the Plaintiffs' businesses.  By passing the CARES Act, Congress reflected the public's will that providing PPP loans to all businesses reflects this public interest.

108.    The Plaintiffs are entitled to declaratory and injunctive relief invalidating and restraining enforcement of the Criminal History Rule in any form.  *See eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006) (setting out the elements for permanent injunctive relief).

## COUNT I: INVALID AGENCY ACTION
## THE CRIMINAL HISTORY RULE CONTRAVENES THE PLAIN TEXT OF THE CARES ACT

109.    Plaintiffs reallege and incorporate by reference the allegations contained in their Introductory Statement and paragraphs 1 through 108, as if fully set forth herein.

110.    A court reviewing an agency action "shall hold unlawful and set aside" any action "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

111.    The text of the CARES Act is clear and unambiguous as to which businesses are eligible for PPP loans.

112.    Because the statute was clear and unambiguous, SBA lacked authority to promulgate regulations that restricted or otherwise "clarified" which businesses are eligible for PPP loans.  *See DV Diamond Club*, 2020 WL 2988528, at *2 (6th Cir. May 15, 2020) ("[T]he Act's specification that 'any business concern' is eligible, so long as it meets the size criteria, is a reasonable interpretation.   That broad interpretation also comports with Congress's intent to provide support to as many displaced American workers as possible and, in doing so, does not lead to an "absurd result" as the SBA claims. Finally, by specifying 'any business concern,' Congress made clear that the SBA's longstanding ineligibility rules are inapplicable given the current circumstances."); *DV Diamond Club*, 2020 WL 2315880, at *1 (E.D. Mich. May 11, 2020) ("SBA's PPP Ineligibility Rule is invalid because it contravenes the PPP."); *Camelot Banquet Rooms*, 2020 WL 2088637, at *5, *7 (W.D. Wis. May 1, 2020) ("[O]ne can find nothing in either the CARES Act or the Small Business Act to suggest that Congress wanted to exclude the plaintiffs from the PPP because of the nature of their business." … "[G]iven Congress's clear intent to extend PPP loans to all small businesses affected by the pandemic … it seems highly unlikely that Congress intended the SBA to apply its exclusion to the PPP.").

113.    Congress did not delegate authority to SBA to create classes of persons to exclude from PPP loans.

114.     Even if the CARES Act were ambiguous—which it is not—the Criminal History Rule would still be unlawful in any form.

115.     SBA's Criminal History Rule is "contrary to the statute" and not entitled to deference. *See United States v. Mead Corp.* 533 U.S. 218, 227 (2001).  SBA is not entitled to deference because the Criminal History Rule is not "a reasonable policy choice for the agency to make."  *Chevron, U.S.A., Inc. v. Nat'l Resources Def. Council, Inc.*, 467 U.S. 837, 845 (1984).

116.     More generally, administrative agencies are not entitled to deference.  Article III of the Constitution vests "the judicial power of the United States" in the courts and creates the judicial office held by "[t]he judges, both of the Supreme Court and inferior courts."  U.S. CONST. art. III, § 1. The judicial power includes the authority to decide cases and controversies; a judge's office includes a duty to exercise independent judgment in the interpretation and application of law in each case.  *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803) ("It is emphatically the duty of the Judicial Department to say what the law is.  Those who apply the rule to particular cases must, of necessity, expound and interpret that rule.").

117.     The judicial office requires judges to "exercise independent judgment in accord with the law."  PHILIP HAMBURGER, IS ADMINISTRATIVE LAW UNLAWFUL? 173 (2014).

118.     Judicial deference to the agency's interpretation would display bias toward SBA, the government litigant in this case.  *See Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980) (explaining that a neutral judiciary "safeguards the two central concerns of procedural due process, the prevention of unjustified or mistaken deprivations and the promotion of participation and dialogue by affected individuals in the decisionmaking process").

119.     The Plaintiffs' reading of the CARES Act is more consistent with Congress's purpose in providing for PPP loans in that Congress made PPP loans available to *all* business concerns that

meet the considerations set out in the CARES Act, Pub. L. No. 116-136, § 1102(a)(2)(F)(i), 134 Stat. 281 (2020); *see also See DV Diamond Club*, 2020 WL 2988528, at *2 (6th Cir. May 15, 2020).

120.     The Criminal History Rule was promulgated in excess of the statutory limitations on SBA's authority to promulgate rules to administer PPP loans.  *See* 5 U.S.C. § 706(2)(C).

121.     As a direct and proximate result of the invalid portions of the Amended Interim Final Rule, the Defendants and their delegatee have caused the Plaintiffs and their employees irreparable harm including but not limited to financial ruin and business ruination.  *See Doran*, 422 U.S. at 932; *DV Diamond Club*, 2020 WL 2988528, at *3.

122.     Especially in this case—where COVID-19 has shut the courthouse door to adjudication of a misdemeanor indictment that would not prohibit Mr. Loughrey from receiving a loan were he to be *convicted*—the application of Question 5 to his circumstance is ludicrous.

123.     The Plaintiffs have been damaged and will continue to be damaged by Defendants' conduct.  No adequate remedy at law is available that could compensate Plaintiffs for their damages.

124.     The Plaintiffs are entitled to declaratory and injunctive relief invalidating and restraining enforcement of the Criminal History Rule in any form.

### COUNT II: INVALID AGENCY ACTION
### THE AMENDED CRIMINAL HISTORY RULE IS ARBITRARY AND CAPRICIOUS

125.     Plaintiffs reallege and incorporate by reference the allegations contained in their Introductory Statement and paragraphs 1 through 108, as if fully set forth herein.

126.     A court reviewing must "hold unlawful and set aside agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  *Dep't of Commerce v. New York*, 193 S. Ct. 2551, 2577–78 (2019) (Thomas, J. concurring) (quoting 5 U.S.C. § 706(2)(A)).

127.     An agency's decision is arbitrary and capricious if it was not "based on a consideration of the relevant factors," *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto Ins.*, 463 U.S. 29, 30–31 (1983), or "'entirely failed to consider an important aspect of the problem' before it." *Pub. Citizen*,

374 F.3d at 1216 (citation omitted).  For instance, an agency decision that is "illogical on its own terms" is arbitrary and capricious.  *Am. Fed'n of Gov't Employees*, 470 F.3d at 380 (cleaned up).

128.    "Even if a decision is based on an agency's 'purported expertise,' the Court must examine the logic behind the decision and ensure that an agency provides a 'clear and coherent' explanation. *Tripoli Rocketry Ass'n, Inc. v. ATF*, 437 F.3d 75, 81 (D.C. Cir. 2006).  "[A]n agency is required to 'examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" *Conservation Law Found. v. Ross*, 374 F. Supp. 3d 77, 88–89 (D.D.C. 2019) (citing *State Farm*, 463 U.S. at 43).

129.    "An agency decision that loses track of its own controlling regulations and applies the wrong rules in order to *penalize private citizens* can never stand." *Caring Hearts Personal Home Servs. v. Burwell*, 824 F.3d 968, 977 (10th Cir. 2016) (Gorsuch, J.) (emphasis added).

130.    A facial review of SBA's Amended Criminal History Rule proves that the rule is arbitrary and capricious.  Congress did not intend for SBA "to exclude business owner[s] who have made mistakes, paid their debt, and turned their lives around."  (Exh. 9, p. 2).  It certainly did not intend to injure small businessmen charged with a misdemeanor.  Because the purpose of the PPP was to provide relief to *all* small businesses negatively impacted by the pandemic, Congress included only two criteria for PPP eligibility.  Yet, in promulgating the Amended Criminal History Rule, SBA failed to rely on the factors that Congress established.  In doing so, SBA excluded certain categories of businesses in complete disregard of the important problem that Congress tried to solve: making favorable loans available to *all* small businesses expeditiously in a time of national economic turmoil. *Cf. Skefos*, 2020 WL 2893413, at *11–12 (quoting *Archdiocese of Santa Fe*, 2020 WL 2096113, at *6) ("The structure of the PPP is simple: PPP funds must be used for payroll, mortgage interest, rent, or utilities. If the funds are used as required, they do not have to be repaid.  Given the obvious purpose of the

PPP, it was arbitrary and capricious for Defendant to engraft a creditworthiness test where none belonged.")

131.    The Amended Criminal History Rule was not a product of SBA's expertise because Congress did not call on SBA's expertise; instead, Congress instructed SBA to administer PPP loans based on the considerations enumerated in the CARES Act.  SBA departed from the text of the law and, in doing so, failed entirely to consider the problem Congress sought to address.  *See Fox v. Clinton*, 684 F.3d 67, 74 (D.C. Cir. 2012).

132.    Moreover, the only explanation that the agency articulated concerned the First Step Act, a statute beyond its expertise.  SBA failed to "provide[] a 'clear and coherent'" explanation for the Criminal History Rules.  *See Tripoli Rocketry*, 437 F.3d at 81.  The rule, in any of its iterations, cannot be upheld "on the basis articulated by the agency." *Int'l Ladies' Garment Workers' Union v. Donovan*, 722 F.2d 795, 814 (D.C. Cir. 1983) (citation omitted).

133.    SBA and its delegatees acted arbitrarily and capriciously when they applied the Criminal History Rule to Plaintiffs, determined that Plaintiffs are ineligible for PPP loans, and denied MoveCorp's application.  Given that Plaintiffs meet all the statutory criteria for PPP loans, no non-arbitrary reason exists to exclude MoveCorp from the group of "*any* business concerns" that Congress sought to benefit through PPP.  CARES Act, Pub. L. No. 116-136, § 1102(a)(1)(B)(2)(D)(i), 134 Stat. 281 (2020) (emphasis added).

134.    SBA's actions since promulgating the Criminal History Rule demonstrate just how arbitrarily and capriciously the agency has acted.  As mentioned above, ¶¶ 72 – 75, SBA exempted from its Criminal History Rule some businesses typically excluded from SBA loans by 13 C.F.R. § 120.110 but not others.  SBA declared that there was no compelling interest "in denying emergency assistance to faith-based organizations that are facing *the same economic hardship to which the CARES Act responded* and who would be eligible for PPP but for their faith-based organizational and associational

decisions." Affiliate Rules for Paycheck Protection Program, 85 Fed. Reg. at 20,817, 20,819 (Apr. 15, 2020) (to be codified at 13 C.F.R. pt. 121) (emphasis added).  Similarly, no compelling interest exists to treat differently businesses owned by persons with criminal records or just charged with a misdemeanor.  There is simply no compelling interest in denying emergency assistance to a business owner who has is merely charged with a misdemeanor and faces the same economic hardship as other small businesses, regardless of whether the business owner is convicted or not.

135.    The substance of SBA's revisions also exposes the rule's arbitrary nature.  Just over the weekend of June 13, SBA changed the regulations again as to Question 6, but not Question 5.  Only now, at the eleventh hour, SBA has decided to distinguish between financial crimes and other crimes—like the sale of drugs in 2004—that have no connection at all to a government-backed loan.  And even then, despite drawing a distinction between types of crimes with respect to Question 6, SBA continues, without explanation, to exclude *all* persons under indictment—regardless of whether a future conviction for the alleged crime with which they have been charged would even exclude them under the twice-amended Question 6.[2]

136.    PPP loans serve the specific purpose of saving small businesses during an unprecedented economic crisis.  Congress made PPP loans fully forgivable and instructed SBA to administer PPP loans expeditiously.  Whatever reasons SBA thinks exist to exclude categories of businesses from other types of 7(a) loans are inapposite here.

137.    As a direct and proximate result of the invalid portions of the Amended Interim Final Rule, the Defendants and their delegatee have caused Plaintiffs and their employees irreparable harm including but not limited to financial ruin and business ruination.

---

[2] As noted *supra* note 1, SBA appears to have amended the Amended Criminal History Rule on the afternoon of June 24, 2020.  There is nothing stopping SBA from amending the rules several more times in the next week.

138.    The Plaintiffs have been damaged and will continue to be damaged by Defendants' conduct.  No adequate remedy at law is available that could compensate Plaintiffs for their damages.

139.    The Plaintiffs are entitled to declaratory and injunctive relief invalidating and restraining enforcement of the Criminal History Rule in any form.

### COUNT III: UNLAWFULLY WITHHELD AGENCY ACTION
### DEFENDANTS FAILED TO CARRY OUT A MINISTERIAL DUTY

140.    Plaintiffs reallege and incorporate by reference the allegations contained in their Introductory Statement and paragraphs 1 through 108, as if fully set forth herein.

141.    The Administrative Procedure Act requires that a reviewing court "compel agency action unlawfully withheld or unreasonably delayed[.]" 5 U.S.C. § 706(1).

142.    Relief under § 706(1) is like the mandamus remedy, whereby a court may "compel an agency action unlawfully withheld or unreasonably delayed." *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 418 (D.C. Cir. 2004).

143.    The CARES Act directed SBA to administer PPP loans based on the considerations that Congress set out in the law.

144.    Congress did not delegate any discretion to SBA to deem classes of small businesses ineligible for reasons not contained in the CARES Act.

145.    SBA's failure to administer PPP loans for some classes of small businesses—including those excluded by the Criminal History Rule—is an unlawfully withheld agency action.

146.    Plaintiffs are entitled to relief under 5 U.S.C. § 706(1) by way of ordering the Defendants to perform the nondiscretionary act of administering PPP loans according to the text of the CARES Act.

## COUNT IV: MANDAMUS
## THE INDIVIDUAL DEFENDANTS FAILED TO CARRY OUT A MINISTERIAL DUTY

147.     Plaintiffs reallege and incorporate by reference the allegations contained in their Introductory Statement and paragraphs 1 through 108, as if fully set forth herein.

148.     The ancient writ of mandamus is appropriate relief when "a public official has violated a 'ministerial' duty. Such a duty must be 'so plainly prescribed as to be free from doubt and equivalent to a positive command.'" *Consol. Edison Co. of N.Y., Inc. v. Ashcroft*, 286 F.3d 600, 605 (D.C. Cir. 2002) (citation omitted).   "A ministerial duty is one that admits of no discretion, so that the official in question has no authority to determine whether to perform the duty."  *Swan v. Clinton*, 100 F.3d 973, 977 (D.C. Cir. 1996).

149.     A writ of mandamus is proper when three elements are present: "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff."  *Lovitky v. Trump*, 949 F.3d 753, 759 (D.C. Cir. 2020).

150.     The second element is satisfied when the defendant's official action is ministerial or nondiscretionary.  "A ministerial duty, the performance of which may, in proper cases, be required of the head of a department, by judicial process, is one in respect to which nothing is left to discretion. It is a simple, definite duty, arising under the conditions admitted or proved to exist, and imposed by law."  *Mississippi v. Johnson*, 71 U.S. 475, 498 (1866).

151.     One such ministerial duty is dispensing sums of money as directed by Congress.  *See Kendall v. U.S. ex rel. Stokes*, 37 U.S. 524, 525 (1838).

152.     The equitable writ of mandamus is appropriate in this extraordinary circumstance because Congress directed SBA to administer PPP loans based on the nondiscretionary criteria set forth in the CARES Act.  Like all other applicants that meet the criteria that Congress set, Plaintiffs have a clear right or privilege to have their PPP loan application processed by the Defendants and their delegatees.  The Defendants have a clear statutory duty to administer PPP loans for all small

businesses that are statutorily eligible under the PPP. And there is no adequate remedy at law by which the Plaintiffs can compel the Defendants to carry out their statutorily imposed ministerial duty.

153.     The Plaintiffs are entitled to mandamus relief ordering the Defendants to administer and process the Plaintiffs' PPP loan applications as required by the plain terms of the CARES Act, without regard to the unlawful Criminal History Rule.

### PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for the following relief against Defendants:

A.     Declaratory judgment that the Amended Criminal History Rule is contrary to law.

B.     Declaratory judgment that the Amended Criminal History Rule is arbitrary and capricious.

C.     Declaratory judgment that SBA and Administrator Carranza unlawfully withheld agency action through their promulgation and/or application of the Amended Criminal History Rule.

D.     Writs of mandamus ordering the individual Defendants to fulfill their duties to administer PPP loans to *all* business concerns that are eligible under the criteria set out in the CARES Act.

E.     Permanent Injunction enjoining the Defendants and their agents from enforcing or using in any fashion or manner whatsoever the Criminal History Rule or 13 C.F.R. § 120.110(n) in the consideration of loan applications made pursuant to the Paycheck Protection Program of the CARES Act.

F.     Permanent Injunction that would save the Plaintiffs' place in line for the first-come, first-served funds that Congress allotted for Paycheck Protection Program loans by enjoining the Defendants from dispensing $340,700 of the funds that Congress allotted under the Paycheck Protection Program and Health Care Enhancement Act on April 24, 2020, which amended the

CARES Act by increasing the funds available for PPP loans to $659,000,000,000. Pub. L. No. 116-139, § 101(a)(1), 134 Stat. 620 (2020).

G.     An order requiring Defendants and their agents to notify, as expeditiously as possible, all SBA lending banks to immediately stop using the Criminal History Rule or 13 C.F.R. § 120.110(n) when determining eligibility for Paycheck Protection Program loans, and to fully process all Paycheck Protection Program loan applications without reference to such regulations.

H.     Order the Defendants and their agents and delegatees, including lending banks, to grant all Paycheck Protection Program loan applications of the Plaintiffs if they otherwise qualify for such loans based on the criteria set out in the CARES Act.

I.     Order the Defendants and their agents and delegatees, including lending banks, to restore Plaintiff MoveCorp to its place in the application queue as of the time MoveCorp's application for a Paycheck Protection Program loan was submitted on April 7, 2020.

J.     An award of costs or attorneys' fees that this Court deems just and proper.

K.     For such other relief as the Court deems just and proper.

Respectfully submitted,

_____/s/___ John Vecchione_____
NEW CIVIL LIBERTIES ALLIANCE

Dated:  June 25, 2020

John Vecchione
Senior Litigation Counsel
D.C. Bar No. 431764
Jared McClain (*Admission in Process*)
Staff Counsel
Kara Rollins
Litigation Counsel
D.C. Bar. No. 1046799
John.Vecchione@ncla.legal
1225 19th Street NW, Suite 450
Washington, DC 20036
tel.: (202) 869-5210
*Counsel to MoveCorp & Mike Loughrey*

## **VERIFICATION**

I, Mike Loughrey, the majority owner of Plaintiff MoveCorp, am a plaintiff in this proceeding. On behalf of myself and my business, I have read this complaint and hereby verify that the contents are true and correct to the best of my knowledge, information, and belief, this 25th day of June 2020.

Mike Loughrey